In the Matter of GUY SULLIVAN, as Trustee of Common School District No. 3 of Town of Pitcairn, St. Lawrence County, Petitioner, against LEWIS A. WILSON, as Commissioner of Education of the State of New York, Respondent.

Supreme Court, Special Term, Albany County, January 14, 1953.

*James J. Crowley* for petitioner.

*Charles A. Brind, Jr.,* and *John P. Jehu* for respondent.

TAYLOR, J. In this proceeding pursuant to article 78 of the Civil Practice Act the petitioner seeks to annul the order of the respondent Commissioner of Education which directed the holding of a special election of the qualified voters of Common School District No. 3 of the Town of Pitcairn, St. Lawrence County, on November 13, 1952, to determine whether the annexation order which he had made on April 16, 1952, should be approved.

The facts are not in dispute. On the last-mentioned date the Commissioner of Education by order dissolved the common school district and directed that its territory be annexed to existing Central School District No. 1 of the Towns of Diana and Croghan, Lewis County, and Antwerp and Wilna, Jefferson County. Within sixty days after the filing of the order, two petitions duly signed by the required number of qualified voters of the common school district each of which requested the permissive referendum provided in subdivision 2 of section 1802 of the Education Law were received by him. The commissioner called special meetings to vote on his order on June 19, 1952, and on September 2, 1952. The resolution which would have confirmed the order failed of passage at both meetings. On October 10, 1952, another petition was received by him also duly signed by the required number of voters of the common school district requesting that a new meeting be called to vote on the same resolution which twice previously had been defeated. Upon that petition the commissioner ordered a meeting to be held on November 13, 1952, which has resulted in the passage of the resolution.

The problem posed requires the interpretation of the following provisions of the Education Law, namely, subdivision 2 of section 1802, subdivision 10 of section 1803 and subdivision 6 of section 1803-a. The pertinent provisions of subdivision 2 of section 1802 are: " 2. Territory shall be annexed to a central school district as provided in this subdivision. a. When an order annexing territory to a central school district has been made and entered as provided in section eighteen hundred one of this chapter, the commissioner shall within ten days thereafter cause certified copies of said order to be filed with the clerk of the central school district and the trustee or trustees of each school district affected thereby. Said order annexing territory to the central school district shall become final sixty days after such filing of the certified copy thereof, unless a permissive referendum is requested as hereinafter provided. b. When at

least one hundred of the qualified voters residing in a central school district, as it existed prior to the order of annexation, or a number of such qualified voters equal to at least ten per centum of the pupils therein, as determined by the last school census, whichever shall be less; or when at least one hundred qualified voters residing within any school district affected by such order or a number of such qualified voters equal to at least ten per centum of the pupils therein, as determined by the last school census, whichever shall be less, *shall, within sixty days after the last filing of the copies of the aforesaid order, file a petition with the commissioner requesting a special meeting of the qualified voters of such district affected thereby,* a special meeting shall be held pursuant to notice, as hereinafter set forth, to determine whether the order annexing the school district or districts, or any one of such districts, shall be approved. If the commissioner determines that the petition has been duly signed by the number of qualified voters required, he shall fix a time and place, within thirty days after the receipt by him of said petition, for a special meeting of the qualified voters of the central school district or school district in respect of which a petition has been filed as aforesaid. The commissioner shall cause notice thereof to be posted at least ten days before the meeting in ten conspicuous places in such central school district or such school district. In addition to the posting of such notice a copy thereof shall be duly published, at least three days before the meeting, in a daily or weekly newspaper published within such central school district or any of the school districts in which such meeting is to be held, or in a newspaper circulating in the territory.'' (Emphasis supplied.)

Subdivision 10 of section 1803 reads: '' 10. A resolution described in subdivision three or four of this section, [annexation resolution as distinguished from original centralization resolution] if defeated, shall not again be presented for action at a school district meeting unless a petition therefor shall be presented to the commissioner *in the manner* provided in subdivision two of section eighteen hundred two.'' (Emphasis supplied.)

Subdivision 6 of section 1803-a, in pertinent part, provides: '' 6. If the resolution described in subdivision two of this section shall be defeated, no such elections or meeting shall again be called within one year after such elections.''

The petitioner urges that the commissioner had no jurisdiction to entertain the petition which was filed with him on October

10, 1952, and to direct reconsideration of the resolution to dissolve and annex at a special meeting of the qualified electors of the common school district called for that purpose on November 13, 1952. He contends that such resolution, having failed of passage previously, could not again be presented for action at a school district meeting upon a petition which had not been filed with the commissioner within the sixty-day period provided in subdivision 2 of section 1802 (*supra*). The statutory words '' in the manner '', he says, should be construed as a limitation of time within which the petition was required to be filed and not as a prescribed procedural method for holding an additional referendum upon a petition filed after the expiration of the sixty-day period. He further argues that an aggressive and persistent group of electors by repetitive petitions to the commissioner might by sheer harassment achieve a result contrary to the will of the majority already expressed.

The Legislature has imposed what it considered sufficient safeguards against any such fatiguing maneuvers of the electors who favor annexation by requiring the affirmative action by petition of a substantial number of the whole electorate. It intended to leave the door open for future referendums upon the petition of the requisite minimum number of voters if defeat was the fate of the first resolution submitted upon a petition originally filed within the sixty-day period of limitation. (§ 1803, subd. 9.) Subdivision 10 (*supra*) makes no mention of time in connection with the presentation of resolutions after their defeat and any limitation would have to be read into the statute by implication. If the Legislature intended to limit additional permissive referendums to the time within which an original petition might be filed, it would have been a simple matter to have said so and its failure to do so is highly significant. In providing that a petition for an election shall be presented '' in the manner provided in subdivision two of section eighteen hundred two '' all that is meant is that it shall contain the requisite number of signatures, that notice by publication and posting of the time and place of the special meeting to consider it shall be given in accordance with the provisions of subdivision 10 (*supra*) and that the proceedings at the meeting shall follow the statutory edict. (*Matter of Henderson,* 157 N. Y. 423, 427–428; *La Monica v. Krauss,* 191 Misc. 589; *Matter of Stuyvesant Real Estate Co. v. Sherman,* 40 Misc. 205; see, also, Words & Phrases, Vol. 38, p. 222.)

The cases (*Matter of Grace* v. *Wilson*, 199 Misc. 738; *Matter of Trustee of School District No. 9 of Town of Onondaga* v. *Commissioner of Educ.*, 199 Misc. 757) relied on by the petitioner are not authority for the proposition that after a petition requesting a permissive referendum has once been filed within the prescribed time and an election had thereon which has resulted in the defeat of the resolution no further petitioning may occur after the original period of limitation had expired. They held only that the order of the commissioner had become final sixty days after the filing thereof as provided in paragraph a of subdivision 2 of section 1802 (*supra*) in the absence of any requested permissive referendum by the voters filed within that period.

The one-year provision contained in subdivision 6 of section 1803-a (*supra*) which prohibits the calling of a meeting after a resolution to approve the commissioner's action has been defeated, which is urged as a further basis to annul the commissioner's order, has no application to the situation which is presented here. That subdivision pertains only to a meeting held for the establishment of a new central school district and not to one held in an existing central school district for the purpose of extending its territorial limits. (Cf. Education Law, § 1803-a, subd. 2; § 1803, subd. 3; *Matter of Grace* v. *Wilson, supra.*)

The petition is dismissed on the merits, without costs.

Submit order accordingly.